# CITY OF DULUTH v. NORTHLAND GREYHOUND LINES.[1]

March 28, 1952.

No. 35,735.

[1]Reported in 52 N. W. (2d) 774.

*Harry E. Weinberg,* City Attorney, and *Harry T. Lathrop* and *Richard L. Bye,* Assistant City Attorneys, for appellant.

*A. L. Janes, Snyder, Gale, Hoke, Richards & Janes,* and *Nathan A. Cobb,* for respondent.

KNUTSON, JUSTICE.

Appeal from a judgment entered pursuant to findings of fact, conclusions of law, and order for judgment after trial by the court without a jury upon stipulated facts.

In 1915, the city of Duluth adopted an ordinance, No. 636, regulating the business of carrying passengers as a common carrier for hire by autocar within the city limits and requiring, among other things, the payment of a license fee for so doing. Section 3 of the ordinance, which is here involved, reads:

"It is hereby declared to be unlawful for any person, firm or corporation to carry on the business of operating an auto car for the carrying of passengers as a common carrier for hire in the city of Duluth, without first having secured liability insurance in any insurance company or association holding a license to do an indemnity insurance business in the state of Minnesota, as specified and for the purpose set forth in section 4 of this ordinance, and without first having obtained a permit and license as in this ordinance required. Provided that any such applicant for a license to engage in the business of operating an auto car for the carrying of passengers for hire upon and over the streets and avenues of the city of Duluth, or any licensed auto transportation company, may, at his or its option, in lieu of such liability insurance, procure a bond or undertaking executed by a surety company licensed to execute such instruments in the state of Minnesota, or a bond or

undertaking executed by two personal sureties to be approved by the city council, guaranteeing for the benefit of the judgment creditor the prompt payment of any judgment in favor of any person sustaining personal injuries or property damage that may be caused by an auto car operated or controlled by such licensee while operated for the carriage of passengers for hire on the streets or avenues of the city of Duluth." (As amended by Ordinance No. 3709, passed January 23, 1928; approved January 25, 1928.)

Section 9 establishes the license fee for the required license at the rate of $1.50 annually for every seated passenger that the car. can carry. Defendant is engaged in the business of a common carrier of passengers for hire in the state of Minnesota and operates its buses under certificates of public convenience and necessity issued in accordance with Minn. St. 1945, c. 221, between fixed termini and over regular routes. Buses come into Duluth from various points in Minnesota, North Dakota, and Wisconsin. None of defendant's buses are operated exclusively within the city of Duluth or contiguous cities, villages, or boroughs. All its buses are licensed, and the license tax is paid thereon in accordance with M. S. A. c. 168. The city claims that the license fee it is entitled to collect under its ordinance, based on the established rate for the buses operated by defendant in and through Duluth for the year 1949, amounts in the aggregate to the sum of $3,052.50. In this action, it seeks to recover judgment for that amount and further seeks to enjoin defendant from operating its buses upon the streets of Duluth until it pays such license fee.

Defendant contends that Duluth and other cities similarly situated were deprived of the power to exact a tax or license fee or bond from interurban bus lines successively by L. 1923, c. 418, § 3(f); Minn. St. 1945, § 168.06, subd. 11; and L. 1949, c. 694, § 3, subd. 9. The statute last cited reads:

"No borough, village, or city shall impose any tax or license fee or bond of any kind for the operation of any motor vehicle on its streets if the person or company owning or operating such vehicle

holds a certificate or permit to operate such vehicle issued in accordance with the provisions of Minnesota Statutes 1945, Chapter 221, provided, that this section shall not apply to vehicles transporting persons for hire which are operated exclusively within any borough, village or city or contiguous cities, villages, or boroughs."

The city contends that L. 1949, c. 694, insofar as here involved, has effectively repealed former acts and that the 1949 act is unconstitutional for the reason (1) that it violates Minn. Const. art. 4, § 27; and (2) that it is violative of *Id.* art. 1, § 2, and art. 4, § 33, and of U. S. Const. Amend. XIV, in that it constitutes class and special legislation and is arbitrary and discriminatory. Furthermore, plaintiff contends that, even if the act involved is held to be constitutional, the legislature, by the enactment of L. 1925, c. 185, § 18 (M. S. A. 221.15), intended to reserve to cities of the first class their police powers incident to the regulation and licensing of such businesses and that all ordinances on the books on January 1, 1925, were intended thereby to remain effective by virtue of the saving clause found in § 18 of that act.

■ Minn. Const. art. 4, § 27, provides that "No law shall embrace more than one subject, which shall be expressed in its title." The title to L. 1949, c. 694, reads as follows:

"An act relating to motor vehicles, providing for the regulation and taxation thereof; repealing Minnesota Statutes 1945, Sections 168.01, 168.02, 168.03, 168.06, 168.073, 168.075, 168.08, 168.14, 168.163, Section 168.165, the third paragraph; and Laws 1947, Chapter 462, and Laws 1947, Chapter 551, Sections 1, 2, and 3."

Briefly, it is the contention of plaintiff that L. 1949, c. 694, deals with the taxation of motor vehicles and that exemption from the payment of a license fee, which defendant asserts under the act, springs from the municipality's police power; consequently, that any legislation attempting to limit or curtail such power of municipalities should be stated in the title to the act.

Rules for the determination of the constitutionality of an act of the legislature under Minn. Const. art. 4, § 27, were stated by Mr.

Justice Mitchell in Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923, 924, as follows:

"* * * To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject. * * * All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. * * * The title was never intended to be an index of the law."

This rule has been repeated in many cases since that time. C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 297 N. W. 9; State v. Meyer, 228 Minn. 286, 37 N. W. (2d) 3; Thomas v. Housing & Redevelopment Authority, 234 Minn. 221, 48 N. W. (2d) 175; State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N. W. 297.

Where the act is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, the court should adopt the former. Stewart v. G. N. Ry. Co. 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427; Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71; Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343.

An act of the legislature should be liberally construed in favor of constitutionality. Sverkerson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944.

That the legislature has considered the exemption here involved germane to and part of our laws respecting the taxation of motor vehicles cannot well be doubted. Minn. Const. art. 16, became effective on November 2, 1920. Section 3 of that article permits the legislature to provide for the taxation of motor vehicles using the

public streets and highways of the state on a more onerous basis than other personal property, provided that such tax shall be in lieu of all other taxes, except certain enumerated taxes not here involved. At the 1921 session of the legislature, c. 461 was passed, providing for the imposition of such taxes. The 1921 act was amended by L. 1923, c. 418. The title to that act reads:

"An act to amend Chapter 461 of the Laws of 1921, an act concerning the taxation, under Article 16 of the state constitution, of motor-vehicles using the public streets and highways of this state in lieu of all other taxes thereon except wheelage taxes, so-called, and concerning the methods of registering and listing such motor vehicles for taxation and the collection of such taxes and the method of preventing escape therefrom and prohibiting any municipality from imposing any tax upon or license fee or bond of any kind for the operation of certain motor vehicles engaged as common carriers of passengers or freight for hire on trunk highways running through any such borough, village or city."

Section 3(f) of the 1923 act, which is the predecessor of the section now under attack, reads:

"No borough, village or city shall impose any tax or license fee or bond of any kind for the operation of any motor vehicle operated upon trunk highways in this state on interurban or intervillage routes and engaged as a common carrier of passengers or freight for hire through any such borough, village or city."

Plaintiff does not contend that the title to the 1923 act is insufficient. In Jefferson Highway Transp. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960, we held that after July 1, 1923, the effective date of the 1923 amendment, a license fee or bond could not be exacted by the city of a bus company operating interurban. L. 1923, c. 418, § 3(f), became § 168.06, subd. 11,. of Minn. St. 1941, which was amended by L. 1945, c. 386. It was reënacted by L. 1949, c. 694, § 3, subd. 9, without any change in language. It has

so remained since that time. The 1949 act, c. 694, is a comprehensive act dealing with the regulation and taxation of motor vehicles.

In State v. Palmer, 212 Minn. 388, 392, 3 N. W. (2d) 666, 668, where we held that L. 1923, c. 418, § 3(f), did not take away from the city any of its police power except the right to impose a fee for a license, we said:

"Defendants contend that L. 1923, c. 418, § 3(f), operated to annul and repeal the power of the city under which the ordinance of October 25, 1918, was passed. This contention ignores the language of the subdivision. Section 3 of c. 418 relates entirely to the rate of tax, and subd. (f) does not purport to take away from the city any part of its police power except the right to impose a fee for the issuance of a license. The city's power to control motor vehicles engaged in the carriage of passengers for hire remained as it was in every other respect."

Plaintiff's contention rests largely on the claim that the 1949 act deals with taxation of motor vehicles and that the license required by the city's ordinance is not germane to taxation. It is clear that the act is much broader than that and deals generally with the regulation of motor vehicles and not with taxation alone. It provides for the registration of motor vehicles and the cancellation of registration under certain circumstances. It is clear that the term "taxation" in this act deals with something more than a property tax. In State v. Oligney, 162 Minn. 302, 202 N. W. 893, we held that our motor vehicle tax may be both a property tax and a privilege tax. In State v. Storaasli, 180 Minn. 241, 243, 230 N. W. 572, 574, we said:

"The license tax is both a property tax and a privilege tax. State v. Oligney, 162 Minn. 302, 202 N. W. 893; Raymond v. Holm, 165 Minn. 215, 206 N. W. 166. It is a property tax in the sense that it exempts the vehicle licensed from other taxation as property. It is in lieu of other taxes. But it is equally clear that it is a privilege tax. All motor vehicles, with the exception hereinafter noted, are prohibited from using the public highways until the tax is

paid. It is a tax imposed for the privilege of using the public highways of the state and collected for the specific purpose of building and maintaining such highways. The elements of property tax and privilege tax are inseparable."

It seems apparent that if the tax on motor vehicles, in addition to being a tax on property, is a privilege tax imposed for the privilege of using the public highways of the state, it deals with exactly the same subject as the city's ordinance, which seeks to enact a license fee for the same privilege. It therefore seems obvious to us that the provision of the law prohibiting the exaction of such license fee is clearly germane to the subject of motor vehicle taxation and is also germane to the broader subject of regulation of motor vehicles; likewise, that it is covered by the title of the 1949 act. Taxation of motor vehicles, when viewed from the standpoint of a privilege tax, is but an incident of the law relating to the regulation of motor vehicles, as is the license fee sought to be exacted by the city.

"A title broader than the statute, if it is fairly indicative of what is included in it, does not offend the constitution." State ex rel. Pearson v. Probate Court, 205 Minn. 545, 552, 287 N. W. 297, 301; Seamer v. G. N. Ry. Co. 142 Minn. 376, 172 N. W. 765.

As such, L. 1949, c. 694, § 3, subd. 9, is germane to the subject expressed in the title of the act. We have already held that L. 1923, c. 418, does not limit the exercise of a city's police power, but prohibits only the exaction of a license fee. State v. Palmer, 212 Minn. 388, 3 N. W. (2d) 666, *supra*. The same is true of the act now under consideration.

■ Plaintiff next contends that L. 1949, c. 694, § 3, subd. 9, violates Minn. Const. art. 1, § 2, and art. 4, § 33, and U. S. Const. Amend. XIV. It is the position of plaintiff that the statute under attack constitutes class legislation, in that common carriers operating under a certificate issued in accordance with the provisions of Minn. St. 1945, c. 221, are divided into two classes, namely (1) those transporting persons for hire which are operated exclusively within

any borough, village, or city, or contiguous cities, villages, or boroughs; and (2) those not operating exclusively within any borough, village, or city, or contiguous boroughs, villages, or cities; and that it is arbitrary and discriminatory legislation. In the one class the city is permitted to exact a license fee, and in the other class it is prohibited; hence, argues the city, it is class legislation and runs afoul of these constitutional provisions.

The law relating to this subject is so well stated in State v. Pehrson, 205 Minn. 573, 577, 287 N. W. 313, 315, 123 A. L. R. 1045, where many of the cases are collected, that we need only repeat what was there said:

"The general principles to be applied are well established. Class legislation is forbidden by Minn. Const. art. 1, § 2, and art. 4, § 33, as well as by U. S. Const. Amend. XIV. 1 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 1673, and cases cited. The problem arises when a law selects particular individuals from a class and imposes on them special burdens from which others of the same class are exempt. State ex rel. Madigan v. Wagener, 74 Minn. 518, 77 N. W. 424, 42 L. R. A. 749, 73 A. S. R. 369; State v. Luscher, 157 Minn. 192, 195 N. W. 914; State v. Broden, 181 Minn. 341, 232 N. W. 517. To operate uniformly, a law must bring within its influence all who are in the same condition and treat them alike. State v. Dirnberger, 152 Minn. 44, 187 N. W. 972. Legislative enactments which discriminate against some and favor others are prohibited unless they affect alike all persons similarly situated and the classification is not arbitrary. State v. LeFebvre, 174 Minn. 248, 219 N. W. 167; In re Application of Humphrey, 178 Minn. 331, 227 N. W. 179; In re Application of Grantham, 178 Minn. 335, 227 N. W. 180. If a classification is made on a reasonable basis and is applicable without discrimination to all similarly situated, it is valid. Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627. If the law presumably strikes at the evil which the legislature proposes to eradicate, it is not to be overthrown because there are other instances to which it might have been applied. State v. Nordstrom, 169

Minn. 214, 210 N. W. 1001; Bosley v. McLaughlin, 236 U. S. 385, 35 S. Ct. 345, 59 L. ed. 632; Blaisdell v. Home Bldg. & L. Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507. The fact that a statute discriminates in favor of a certain class does not make it arbitrary if the discrimination is founded upon a reasonable distinction or if any reasonable state of facts can be conceived to sustain it. State Board of Tax Commrs. v. Jackson, 283 U. S. 527, 537, 51 S. Ct. 540, 75 L. ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536; Rast v. Van Deman & Lewis Co. 240 U. S. 342, 36 S. Ct. 370, 60 L. ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455. If the selection is neither capricious nor arbitrary and rests upon some reasonable consideration of difference or policy, there is no denial of equal protection of the law. Brown-Forman Co. v. Commonwealth of Kentucky, 217 U. S. 563, 30 S. Ct. 578, 54 L. ed. 883. The rights of all persons must rest upon the same rule under similar circumstances, and classification must be based on some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. Louisville G. & E. Co. v. Coleman, 277 U. S. 32, 37, 48 S. Ct. 423, 72 L. ed. 770, quoted in National Tea Co. v. State, 205 Minn. 443, 286 N. W. 360."

For later cases, see General Mills, Inc. v. Division of Employment and Security, 224 Minn. 306, 28 N. W. (2d) 847; Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598; Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538; Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343; Thomas v. Housing & Redevelopment Authority, 234 Minn. 221, 48 N. W. (2d) 175.

That there is reason for the classification here involved needs little demonstration. One class can, at the worst, be subjected to a single license fee. The other might, were it not for the statutory prohibition here involved, be subjected to a similar license fee exacted by every city and village throughout which it might pass. There are other reasons which could be mentioned for the difference in the classification.

In Jefferson Highway Transp. Co. v. City of St. Cloud, 155 Minn. 463, 468, 193 N. W. 960, 962, we said with respect to such classification in a city ordinance:

"* * * Relating to classifications in ordinances of the last named sort the judgment of the legislative body is not interfered with unless manifestly arbitrary and without reasonable justification. This obtains even when there is a right to impose a license tax for the privilege of conducting a business. Burroughs, Taxation, § 77. Placing a certain intracity passenger business in a different class from intercity transportation seems to us a matter of legislative judgment. The class of busses that carry passengers exclusively between hotels and depots are operated upon a different plan from the intercity busses and also differently from the taxis or jitneys which run everywhere in the city. The business of these classes is essentially different, so also is the use of the streets by them."

It is our opinion that the act in question is not violative of these constitutional provisions.

■ Plaintiff finally contends that even if L. 1949, c. 694, is held to be constitutional the city still has the right to exact the license fee for the reason that such rights have been reserved to it under L. 1925, c. 185, § 18. Section 4 of this act places the supervision and regulation of common carriers using motor vehicles on our highways under the jurisdiction and control of the state railroad and warehouse commission. The title to the act reads:

"An act providing for supervision and regulation of transportation of persons and property for hire as common carriers on any public highway, in this state, by motor vehicles, and for the safe operation thereof, and subjecting such transportation to the jurisdiction and control of the railroad and warehouse commission; and defining what constitutes such transportation for hire, and providing for the enforcement of this act and for punishment for violation thereof." ·

Section 18 of the act reads:

"No provision in this act shall authorize the use by any transportation company of any public highway in any city of the first class, whether organized under Section 36, Article 4, of the Constitution of the State of Minnesota, or otherwise, in violation of any charter provision or ordinance of such city in effect January 1, 1925; nor shall this act be construed as in any manner taking from or curtailing the right of any city or village to regulate and control the routing, parking, speed or the safety of operation of a motor vehicle operated by any transportation company under the terms of this act, or the general police power of any such city or village over its highways; nor shall this act be construed as abrogating any provision of the charter of any such city now organized and operating under said Section 36 of Article 4, requiring certain conditions to be complied with before such transportation company can use the highways of such city, and such rights and powers herein stated are hereby expressly reserved and granted to such city."

Plaintiff's contention is not tenable. When the 1925 act became law, the city of Duluth had already been deprived of the right to exact a license fee by virtue of L. 1923, c. 418, § 3(f). Its ordinance was no longer operative. The 1925 act did not repeal the 1923 act. The two acts do not deal with the same subject matter. L. 1925, c. 185, § 18, could not save the city something which it had already lost. We have held that L. 1923, c. 418, § 3(f), did not affect the city's police power, but only prohibited the imposition of a license fee. The 1925 act reserves to the city those police powers exercised over the use of its streets at the time the act became effective, but did not restore the right to exact a license fee which had been proscribed by L. 1923, c. 418, § 3(f). L. 1949, c. 694, § 3, subd. 9, did not repeal by implication L. 1925, c. 185, § 18, nor did L. 1925, c. 185, § 18, restore to the city the right to exact a license fee which it was deprived of by L. 1923, c. 418. L. 1949, c. 694, § 3, subd. 9, did nothing more than to continue in effect the law prohibiting the exaction of

a license fee, which had its origin in L. 1923, c. 418, § 3(f), with such slight modifications as were made by L. 1945, c. 386.

Part of plaintiff's brief is devoted to arguments which might more appropriately be addressed to the legislature than to the courts. It is not the province of the courts to determine what policy should be adopted in providing additional revenues for municipalities to meet the ever-increasing cost of furnishing services demanded by the public. Rather, it is our function to survey acts of the legislature for the purpose of determining whether such acts contravene the fundamental law contained in our constitution. Having determined that acts of the legislature do not offend the constitution, the matter of determining what is best for municipalities must be left to its judgment. What police powers a municipality may exercise must come from the legislature. 37 Am. Jur., Municipal Corporations, §§ 277, 279; Power v. Nordstrom, 150 Minn. 228, 184 N. W. 967, 18 A. L. R. 733. What the state may confer it may take away.

"* * * What limits should be imposed upon the licensing power, was a matter for the legislature to determine,—a matter dependent upon the judgment and discretion of the legislature." City of St. Paul v. Colter, 12 Minn. 16 at p. 19 (41 at p. 48).

"* * * Absent constitutional restriction, the legislature may at its pleasure modify or withdraw any powers so entrusted to a city, hold such powers itself, or vest them in other agencies." Monaghan v. Armatage, 218 Minn. 108, 112, 15 N. W. (2d) 241, 243.

Affirmed.